949 So.2d 1 (2007)
George PAZ and Joseph P. Harris, et al.
v.
BRUSH ENGINEERED MATERIALS, INC., Brush Wellman, Inc., Wess-Del, Inc. and The Boeing Company.
No. 2006-FC-00771-SCT.
Supreme Court of Mississippi.
January 4, 2007.
Rehearing Denied March 1, 2007.
*2 Ruben Honik, Stephan Matanovic, Robert C. Latham, Natchez, Randall A. Smith, Stephan M. Wiles, attorneys for appellants.
Jeffrey D. Ubersax, Paul H. Stephenson, III, Roy D. Campbell, III, Jackson, Vernon Lee Woolston, Timothy Dale Crawley, Ridgeland, attorneys for appellees.
EN BANC.
SMITH, Chief Justice, for the Court.
¶ 1. Before the Court is a certified question of Mississippi law from the United States Court of Appeals for the Fifth Circuit. See M.R.A.P. 20. Class action plaintiffs have sued defendant corporations for medical monitoring costs for detection of disease development due to beryllium exposure allegedly caused by the negligence of the defendants. The United States District Court for the Southern District of Mississippi granted the defendants' motions to dismiss, finding a failure to state a cause of action with regards to plaintiffs' medical monitoring claim and a lack of personal jurisdiction over two of the defendants. Paz v. Brush Engineered Materials, Inc., 351 F.Supp.2d 580 (S.D.Miss. 2005) (reversed in part and question certified by Paz v. Brush Engineered Materials, Inc., 445 F.3d 809 (5th Cir.2006)). Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit, and finding that Mississippi law was silent as to the recognition of medical monitoring actions, the Fifth Circuit posed the question to this Court of "[w]hether the laws of Mississippi allow for a medical monitoring cause of action, whereby a plaintiff can recover medical monitoring costs for exposure to a harmful substance without proving current physical injuries from that exposure?" Paz, 445 F.3d at 815.
¶ 2. Plaintiffs, current or previous employees of the John C. Stennis Space Center in Mississippi (Stennis Center) and Canoga Park facility in California (Canoga Park), as well as their family members, sued four corporations. First, Boeing Company is the operator of the Stennis and Canoga Park facilities. Also defending the suit are Brush Engineered Materials, Inc. (BEMI) and its subsidiary Brush *3 Wellman, Inc. (Brush), both of which sold beryllium products used at the Stennis Space Center and Canoga Park facilities to Boeing. Lastly, Wess-Del Inc. is the fabricator of beryllium goods which machined, assembled, fabricated and distributed beryllium-containing goods for use at the Stennis Center.
¶ 3. Plaintiffs claim exposure to beryllium due to the alleged negligence of defendants and seek to recover medical monitoring costs in order to stay abreast of their possible development of Chronic Beryllium Disease, typically a latent disease which impairs the lungs and often causes death. Plaintiffs seek an injunction requiring the defendants to fund a court-supervised medical monitoring program. None of the plaintiffs has suffered physical injury from the alleged exposure.
¶ 4. Plaintiffs appeal from the January 11, 2005, order of the United States District Court for the Southern District of Mississippi granting the Defendants' Motions to Dismiss. One of two grounds for Defendants' motions was failure to state a claim because Mississippi does not recognize a medical monitoring cause of action, and the Fifth Circuit requests that this Court decide that issue. Paz, 445 F.3d at 815. The parties' collective assertions for review can be consolidated into three issues:
I. The State of Common Law Regarding the Recognition of a Medical Monitoring Cause of Action Which Allows Recovery Without a Showing of Physical Damage.
II. The Use of Policy Considerations in Determining Whether to Recognize a Medical Monitoring Cause of Action.
III. The Authority of this Court to Create a Medical Monitoring Cause of Action.

DISCUSSION
I. The State of Common Law Regarding the Recognition of a Medical Monitoring Cause of Action Which Allows Recovery Without a Showing of Physical Damage
Mississippi Law
¶ 5. Plaintiffs contend that recognition of a medical monitoring action is in accordance with Mississippi law; however, the decisions of this Court do not support that contention. "To prevail on a negligence claim, a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." Miss. Dep't of Mental Health v. Hall, 936 So.2d 917, 922 (Miss. 2006). Creating a medical monitoring action would be contrary to Mississippi common law, which does not allow recovery for negligence without showing an identifiable injury, and, further, strongly indicates that a claim for medical monitoring, as Plaintiffs present it, lacks an injury.
¶ 6. Plaintiffs claim they should be able to recover damages in the form of medical monitoring costs solely on the basis that they have been exposed to harmful levels of beryllium and are in danger of suffering from latent diseases. Plaintiffs cite Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648 (Miss.1995), an emotional distress case, for the proposition that Mississippi previously recognized a similar tort cause of action without present physical injury. Defendants contend that Ferguson, in fact, requires an actual, present injury.
¶ 7. As it pertains here, the law supports Defendants. In Ferguson, this Court held that proof of an injury is required in negligence cases. Id. at 650, 657-58. In Ferguson the Court listed two circumstances under which recovery for emotional distress *4 without physical injury is allowed. Both require the presence of an injury, with the only distinction being the additional element of proof required.
¶ 8. The first involves a claim of outrageous conduct. "[W]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally  or even unintentionally yet the results being foreseeable  Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury." Id. at 658. "In such instances, it is the nature of the act itself  as opposed to the seriousness of the consequences  which gives impetus to legal redress. Id.
¶ 9. The first instance does not lack an injury requirement but recognizes that "injury" is not restricted to physical injury, also encompassing mental and emotional injuries as compensable. Some "consequence" of the defendants' actions must be shown; however, in cases of outrageous conduct the primary consideration for redress is not the consequence, i.e., the injury, but, rather, an additional element of proof, the defendant's outrageous conduct. Accordingly, recovery in emotional distress cases is possible without a physical injury. Beyond evidence of emotional distress, which is the injury, the plaintiff must show that the defendant's conduct was willful, wanton, malicious, outrageous or intentional. Adams v. U.S. Homecrafters, Inc. 744 So.2d 736, 743 (Miss.1999); Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 902 (Miss. 1981). Here, the Plaintiffs' pleadings and briefs lack allegations or arguments suggesting willful, wanton, malicious, outrageous or intentional conduct by defendants,[1] thereby eliminating this category and leaving for analysis the second instance in which recovery is allowed for emotional distress without physical injury.
¶ 10. In the second instance, tort recovery is allowed "[e]ven in the absence of physical injury accompanying the negligent conduct, if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession." Ferguson, 662 So.2d at 658. The test of reasonable foreseeability must also be met. Id.
¶ 11. Presenting no allegations of outrageous conduct, this case involves a claim of simple negligence as in this second instance. Again, though no physical injury is required, the person claiming emotional distress must prove that he has incurred a mental or emotional injury. The additional proof in this instance beyond showing an injury is that the injury is medically cognizable and treatable. In such a case of ordinary negligence a plaintiff may not recover damages for emotional distress without showing a physical manifestation of injury or demonstrable harm. See Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc., 759 So.2d 1203, 1211 (Miss.2000) (holding that where there is ordinary negligence, there must be demonstrative harm); Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 65 (Miss.2004) (same); Ill. Cent. R.R. v. Hawkins, 830 So.2d 1162, 1174 (Miss.2002) (same); Am. Bankers' Ins. Co. of Fla. v. Wells, 819 So.2d 1196, 1209 (Miss.2001) (same).
*5 ¶ 12. Ferguson does not, as Plaintiffs suggest, lead to the logical inference that this Court would recognize a medical monitoring action, whereby the plaintiffs need not show an injury. Similarly, as for the conclusion in Ferguson, this Court reversed the trial court award of damages for emotional distress allegedly caused by a fear of future illness since manifestation of physical illness or scientific support for the emotional injury is required before recovery is allowed. 662 So.2d at 650. Further, as noted in Ferguson, "this Court has never allowed or affirmed a claim of emotional distress based [solely] on a fear of contracting a disease or illness in the future, however reasonable." Id. at 658.
¶ 13. Though plaintiffs analogize emotional distress actions to medical monitoring actions, the two claims are not analogous. One element of an emotional distress action is that the victim have suffered some injury. Hawkins, 830 So.2d at 1174. Yet, a medical monitoring cause of action, as Plaintiffs present it, would not require an injury be proven. Thus, this Court rejects the argument that emotional distress decisions from this Court establish a legal foundation for the creation of a medical monitoring action, without requiring proof.
¶ 14. Likewise, Mississippi law does not recognize a claim for medical monitoring based on increased risk of future disease. In Anglado v. Leaf River Forest Products, Inc., 716 So.2d 543, 546 (Miss.1998), during the trial court determination of whether to grant summary judgment for the defendants on the plaintiffs' claims of increased risk of future disease and medical monitoring, this Court decided Ferguson. As a result, plaintiffs conceded that Ferguson foreclosed recovery for those claims, and the trial court granted summary judgment on the plaintiffs' personal injury claims, dismissing them with prejudice. Id. This Court affirmed that judgment. Id. at 549.
¶ 15. The possibility of a future injury is insufficient to maintain a tort claim. Recognizing a medical monitoring cause of action would be akin to recognizing a cause of action for fear of future illness. Each bases a claim for damages on the possibility of incurring an illness with no present manifest injury. There is no tort cause of action in Mississippi without some identifiable injury, either physical or emotional. Thus, this Court has held that "it is clear that Mississippi does not recognize a cause of action for fear of possibly contracting a disease at some point in the future." Brewton v. Reichhold Chemicals, Inc., 707 So.2d 618, 620 (Miss. 1998) (citing Beech v. Leaf River Forest Prods., Inc., 691 So.2d 446, 451 (Miss. 1997); Ferguson, 662 So.2d at 658 (for the same proposition)).
¶ 16. Further, the determination of whether Mississippi can recognize a medical monitoring action hinges on whether the purported cause of action includes a compensable injury. The United States Supreme Court has held that "[a]n exposed plaintiff can recover related reasonable medical monitoring costs [as an element of damages] if and when he develops symptoms." (Emphasis added). Metro-North Commuter R.R. v. Buckley, 521 U.S. 424, 432, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). This Court has held that exposure to a dangerous substance is not an injury. Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 705-09 (Miss.1990). Exposure to a potentially harmful substance does not in itself constitute a personal injury. Id. "Persons who allege only exposure are asking for a remedy without a wrong." Schiro v. Am. Tobacco Co., 611 So.2d 962, 965 (Miss.1992). Therefore, plaintiffs have a claim for harm which is not compensable under Mississippi law. Accordingly, it would be contrary to current *6 Mississippi law to recognize a claim for medical monitoring allowing a plaintiff to recover medical monitoring costs for mere exposure to a harmful substance without proof of current physical or emotional injury from that exposure.
Other States
¶ 17. The United States Supreme Court has examined the common law for the allowance of recovery for negligently caused exposure by a plaintiff who has yet to suffer from a disease.[2]Buckley, 521 U.S. at 432, 117 S.Ct. 2113 (holding that an employee could not recover damages and medical monitoring costs under the Federal Employers' Liability Act unless or until he manifested symptoms of a disease). The Court found that with few exceptions, "common law courts have denied recovery to those who are disease and symptom free." Id. The Court concluded that to recognize medical monitoring costs alone as a separate injury is to go "beyond the bounds of currently evolving common law." Id. at 439, 117 S.Ct. 2113. Accordingly, as plaintiffs invite this Court to recognize a medical monitoring cause of action, an act which would require an unprecedented and unfounded departure from the long-standing traditional elements of a tort action, this Court declines that invitation.
¶ 18. Plaintiffs argue that because a majority of states recognize a medical monitoring cause of action, this Court should as well. In support of their contention that the majority of states recognize medical monitoring actions, plaintiffs cite seven states as having actually recognized the cause of action[3] and five as having predicted such a cause of action.[4] Defendants counter with seventeen cases illustrative of the refusal of various states to recognize a medical monitoring cause of action.[5] This is obviously an issue of divided authority among our sister states.
*7 ¶ 19. Plaintiffs overestimate the persuasiveness of other states' decisions on this Court. The extent of the usefulness of the citations provided by both parties is the establishment of the existence of a conflict among jurisdictions over this matter, as is the case concerning numerous other issues. This Court is not bound by the decisions of courts of other jurisdictions on similar questions. Griffith v. Gulf Ref. Co., 215 Miss. 15, 36-37, 61 So.2d 306, 307 (1952). While the Court may utilize these decisions as persuasive authority if it finds them well-reasoned, the decisions are not binding, and this Court is at perfect liberty to disregard them. Id.
¶ 20. This Court need not survey other states to reach a conclusion on this matter. Likewise, this Court is not persuaded by Plaintiffs' mention of the Department of Energy's practice of requiring medical monitoring costs for its employees as a condition of all of its contracts with beryllium fabricators. See 10 C.F.R. §§ 850, et seq. Considering Mississippi law, this Court finds that as Mississippi requires the traditional elements of proof in a tort action, it has refused to recognize a category of potential illness actions, which would include medical monitoring actions. Therefore, this Court preserves the requirement of each of the traditional tort elements and declines to recognize medical monitoring as a cause of action.
II. The Use of Policy Considerations in Determining Whether to Recognize a Medical Monitoring Cause of Action
¶ 21. Plaintiffs assert policy considerations that favor recognizing a right to *8 recover medical monitoring costs without a showing of present physical injury, including a: (1) public health interest in encouraging and fostering access to early medical testing for those exposed to hazardous substances, (2) possible economic savings realized by the early detection and treatment of the disease; (3) deterrence of tortfeasors; and (4) avoidance of the injustice of burdening an economically disadvantaged person with expensive treatment needed due to another's negligence. Defendants claim that it is improper for this Court to consider policy in determining whether to recognize a new cause of action. However, in Buckley the United States Supreme Court also reviewed policy considerations, including a potential floodgate of trivial litigation and the resultant delay and decrease in remedy for those with manifested illnesses as well as the extra burden on consumers resultant from virtually unlimited liability. 521 U.S. at 432-38, 117 S.Ct. 2113.
¶ 22. In developing the common law, courts may evaluate policy considerations. In Buckley, the United States Supreme Court responded to a policy consideration raised by the plaintiff in favor of recognizing a medical monitoring action by stating "here the relevant question concerns not simply recovery in an individual case, but the consequences and effects of a rule of law that would permit recovery." 521 U.S. at 438, 117 S.Ct. 2113. The Court noted that, if allowing plaintiff to recover without showing an injury provided benefits in some individual cases but would comprehensively cause more harm than good, the Court may factor that consideration into its decision to refuse to allow the recovery. Id. The Court in Buckley decided that it need not engage in weighing the factors, and likewise, this Court need not balance the harms in order to reach a result but merely notes in response to defendants' assertion that it may indeed factor policy considerations into its decision whether to recognize a new cause of action.
III. The Authority of this Court to Create a Medical Monitoring Cause of Action.
¶ 23. Defendants also argue that the creation of a new cause of action is an improper task for this Court but, instead, proper only for the Legislature. Defendants cite statements in Gunter v. Gray, 876 So.2d 315, 317 (Miss.2004), and Mauldin v. Branch, 866 So.2d 429, 435 (Miss. 2003), to support the proposition that only the state legislature can create law and decide when a law should be created. As this proposition and the cases given in support are irrelevant here and contrary to law, we should reject Defendants' proposition.
¶ 24. In each of these cases this Court's decision was subject to a statute which clearly and directly regulated the disputes. Gunter, a domestic case, involved a dispute over termination of parental rights, which was governed by a specific statute. 876 So.2d at 317. Therefore, the Court found that it must defer to the legislature as its decision was dictated by the statute. Similarly, in Mauldin, the Court held that congressional redistricting must be left to the legislature as that is specifically what the pertinent statute requires. 866 So.2d at 435. That is not the case here. There is no statute concerning medical monitoring or the allowance of tort recovery on the grounds of fear of a future illness. This is the type of case in which the Court has held that the common law is malleable, particularly so in the area of torts, and thus this Court can create and discontinue torts in common law. See Saunders v. Alford, 607 So.2d 1214, 1219 (Miss.1992) (holding that the Mississippi Supreme Court created the tort of criminal *9 conversation and had the authority to decide to end recognition of that tort in Mississippi).

CONCLUSION
¶ 25. This Court has continuously rejected the proposition that within tort law there exists a cause of action or a general category of injury consisting solely of potential future injury. Therefore, in response to the question from the Fifth Circuit as to whether Mississippi recognizes a medical monitoring cause of action without a showing of physical injury this Court has previously refused to recognize such an action and in accordance with Mississippi common law continues to decline to recognize such a cause of action.
¶ 26. CERTIFIED QUESTION ANSWERED.
WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. DIAZ, EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, J., NOT PARTICIPATING.
NOTES
[1] Plaintiffs assert four causes of action  medical monitoring, product liability, negligence, and breach of warranty, and within the negligence claim request medical monitoring damages, further suggesting that plaintiffs based their claims on negligent, as opposed to intentional, acts.
[2] Although the focus of the rejection of the plaintiffs' claim was that the request for a lump sum payment of the costs plaintiffs claimed for medical monitoring, the Court specifically addressed the issue of the plaintiff's apparent claim "that medical monitoring costs themselves represent a separate negligently caused economic `injury.'" Buckley, 521 U.S. at 439-40, 117 S.Ct. 2113.
[3] See Burns v. Jaquays Mining Corp., 156 Ariz. 375, 752 P.2d 28, 33-34 (Ct.App.1987) (holding that awards of surveillance costs to monitor the effects of hazardous chemical exposure are allowed in the absence of physical injury); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 822-23 (1993) (en banc) (same); Petito v. A.H. Robins, 750 So.2d 103, 106-07 (Fla.Ct. App.2000) (same); Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 314 (1987) (same); Redland Soccer Club, Inc. v. Dep't of the Army, 548 Pa. 178, 696 A.2d 137, 145 (1997) (same); Hansen v. Mountain Fuel Supply, 858 P.2d 970, 979-81 (Utah 1993) (Same); Bower v. Westinghouse, 206 W.Va. 133, 522 S.E.2d 424, 429-30 (1999) (same).
[4] See, e.g., In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 852 (3d Cir.1990) (concluding that the Pennsylvania Supreme Court would recognize a medical monitoring action without a showing of physical injury); Martin v. Shell, 180 F.Supp.2d 313, 323 (D.Conn.2002) (noting a citation by Connecticut Supreme Court indicating that it would uphold a medical monitoring action without requiring physical injury); Carey v. Kerr-McGee Chem. Corp., 999 F.Supp. 1109, 1119 (N.D.Ill.1998) (concluding that the Illinois Supreme Court would uphold a claim for medical monitoring without requiring plaintiffs to show actual, present injury); Bocook v. Ashland Oil, Inc., 819 F.Supp. 530, 537-38 (S.D.W.Va.1993) (concluding that Kentucky law would recognize a medical monitoring action without requiring injury); Cook v. Rockwell Int'l Corp., 755 F.Supp. 1468, 1476-77 (D.Colo.1991) (concluding that the Colorado Supreme Court would probably recognize a medical monitoring cause of action without requiring physical injury).
[5] See Parker v. Brush Wellman, Inc., 377 F.Supp.2d 1290, 1296, 1302 (N.D.Ga.2005) (concluding that the Georgia Supreme Court does not recognize a medical monitoring action without the showing of an injury); Jones v. Brush Wellman Inc., No. 1:00 CV 0777, 2000 WL 33727733, *8, 2000 U.S. Dist. LEXIS 21897, *23 (N.D.Ohio Sept.13, 2000) (concluding that Tennessee law does not recognize a medical monitoring action absent a present injury); Hinton v. Monsanto Co., 813 So.2d 827, 830-32 (Ala.2001) (holding that Alabama law does not recognize a medical monitoring action absent a present injury); Wood v. Wyeth-Ayerst Labs., 82 S.W.3d 849, 852-56 (Ky.2002) (holding that Kentucky law does not recognize a medical monitoring cause of action absent present injury); Henry v. Dow Chem. Co., 473 Mich. 63, 701 N.W.2d 684, 686 (2005) (holding that Michigan law does not recognize a medical monitoring action absent present injury); Badillo v. American Brands, Inc., 117 Nev. 34, 16 P.3d 435, 440-41 (2001) (holding that Nevada law does not recognize a medical monitoring cause of action absent a present injury); Lowe v. Philip Morris USA, Inc., 142 P.3d 1079, 207 Or.App. 532, 556-57 (Or.Ct.App.2006) (holding that Oregon law does not permit recovery for a medical monitoring action without physical injury). See also Trimble v. Asarco Inc., 232 F.3d 946, 962-63 (8th Cir.2000) (rejecting medical monitoring claim absent present injury on the basis that Nebraska does not recognize such an action); Ball v. Joy Technologies, Inc., 958 F.2d 36, 39 (4th Cir.1991) (holding that West Virginia does not recognize recovery of medical monitoring costs absent physical injury); Duncan v. Northwest Airlines, Inc., 203 F.R.D. 601, 607-09 (W.D.Wash. 2001) (concluding that it would be contrary to Washington law to recognize a medical monitoring action absent accompanying present injury); Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 552 (D.Minn.1999) (declining to recognize a medical monitoring action); Thomas v. FAG Bearings Corp., 846 F.Supp. 1400, 1410 (W.D.Mo.1994) (inferring that Missouri law would not recognize a medical monitoring action absent proof of damages in the form of an injury); Carroll v. Litton Sys. Inc., No. B-C-88-253, 1990 WL 312969, at *51, 1990 U.S. Dist. LEXIS 16833, at *149-50 (W.D.N.C. Oct. 29, 1990) (concluding that the Supreme Court of North Carolina would not recognize a medical monitoring action); Purjet v. Hess Oil Virgin Islands Corp., 22 V.I. 147, 153-54, 1986 WL 1200 (D.V.I. Jan. 8, 1986) (holding that to recognize a medical monitoring action would be contrary to the law governing the Virgin Islands); Mergenthaler v. Asbestos Corp. of Am., 480 A.2d 647, 651 (Del.1984) (holding that Delaware law does not recognize a medical monitoring cause of action without a present injury).